1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11  ESTATE OF RONNIE KONG, by and
    through successor in interest, Touch
12  Kong; TOUCH KONG, an individual,

13                                  Plaintiff,

14          v.

15  CITY OF SAN DIEGO; SAN DIEGO
    POLICE DEPARTMENT; ANDREW
16  CAMPBELL; CHRISTOPHER LUTH;
    AND TONY MARASCHIELLO,
17
18                                  Defendants.
19

Case No. 22-cv-1858-BAS-DDL

**ORDER:**

**(1)  GRANTING DEFENDANTS'
      PARTIAL MOTION TO
      DISMISS (ECF No. 7); and**

**(2)  GRANTING PLAINTIFF LEAVE
      TO AMEND**

20
21          This action arises from a May 2020 police shooting in which Plaintiff Touch Kong's
22  son, Ronnie Kong, was fatally shot by a team of SWAT officers responding to a 911 call.
23  Plaintiff filed the present action against the City of San Diego ("City") and the San Diego
24  Police Department ("SDPD" and, together with the City, "Municipal Defendants"), as well
25  as the individual SDPD officers who responded to the scene ("Individual Defendants").[1]
26  Her Complaint alleges several constitutional violations under 42 U.S.C. § 1983 ("Section
27

_____

28      [1] SDPD officers Andrew Campbell, Christopher Luth, and Tony Maraschiello are the Individual
    Defendants.

- 1 -

1983") and § 1985(3).  Plaintiff also asserts claims under California law for common law assault and battery and deprivation of civil rights, which she brings as survival actions. Finally, Plaintiff presses a wrongful death action claim under state law.  (*See generally* Compl., ECF No. 1.)

Now before the Court is Defendants' partial motion to dismiss.  (Mot. to Dismiss ("Mot."), ECF No. 7.)  Municipal Defendants argue that the Section 1983 claims pressed against them warrant dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(6) because Plaintiff's allegations do not meet the requirements of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).  (Mot. at 9:27–12:24.) Collectively, Defendants also argue that Plaintiff is precluded from bringing state law claims for assault, battery, and deprivation of civil rights because she is not a "real party in interest" to those claims under Cal. Civ. Proc. Code § 367—an argument they style as a "standing" challenge.  (Mot. at 15:9–23.)  And, finally, Defendants aver that all Plaintiff's state law claims—including her wrongful death claim—fail under Rule 12(b)(6) for her noncompliance with the claim-presentment requirement of the California Tort Claims Act ("CTCA"), Cal. Gov't Code § 945.4 *et seq.*  (*Id.* at 12:25–15:8.)  Plaintiff opposes (Opp'n, ECF No. 8), and Defendants reply (Reply, ECF No. 9).

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Fed. R. Civ. P. 78(b); Civ. L. R. 7.1(d)(1).  For the reasons set forth below, the Court **GRANTS** Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** the action.

## I.    BACKGROUND[2]

On around May 29, 2020, at approximately 5:00 p.m., a resident on the 3800 block of Euclid Avenue in San Diego, California, called 911.  (Compl. ¶ 21.)  The caller reported a firearm incident with a possible murder in the vicinity.  (*Id.*)  The caller identified Plaintiff's son, Ronnie Kong, as the suspect.  (*Id.*)  Police and SWAT officers from SDPD

---

[2] These facts are taken from the Complaint. (ECF No. 1.)  For the instant Motion, the Court accepts as true all the Complaint's factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

22cv1858

responded to the scene.  (*Id.* ¶ 22.)  When they arrived, SDPD officers, including the Individual Defendants, surrounded the apartment where Ronnie Kong was living.  (*Id.*)  They called for Ronnie Kong to emerge from the building, which he did.  (*Id.* ¶ 23.)  When Ronnie Kong exited his apartment, he allegedly walked a few steps down the stairs and then was shot multiple times by the Individual Defendants.  (*Id.*)  He was critically injured and died on the scene.  (*Id.*)

Plaintiff commenced the instant lawsuit in November 2022.  (*See generally* Compl.)  At the time she filed her Complaint, she proceeded *pro se*.  However, she obtained counsel just before executing service and prior to Defendants' filing of the pending Motion.  (*See* Not. of Appearance, ECF No. 4.)

The Complaint contains seven separate claims in relation to the death of her son.  The first three are federal civil rights claims under Section 1983.  The next three are various California common law and statutory claims.  The last claim is an alleged violation of 42 U.S.C. § 1985(3).  The claims are listed in more fulsome detail below:

- <u>Count 1</u>: Excessive force and unreasonable seizure under the Fourth Amendment against the Individual Defendants.  (Compl. ¶¶ 25–33.)

- <u>Count 2</u>: Unconstitutional customs and practices exhibiting deliberate indifference to the rights and liberties of the public at large, and Ronnie Kong in particular, against the Municipal Defendants.  (*Id.* ¶¶ 34–44.)

- <u>Count 3</u>: Interference with familial integrity as a matter of substantive due process under the Fourteenth Amendment against Individual Defendant Andrew Campbell and the Municipal Defendants.  (*Id.* ¶¶ 45–52.)

- <u>Count 4</u>: Common law assault and battery against the Individual Defendants and the City.  (*Id.* ¶¶ 53–59.)

- <u>Count 5</u>: A wrongful death action pursuant to Cal. Civ. Proc. Code §§ 377.10(b) and 377.60 against the Individual Defendants and the City.  (*Id.* ¶¶ 60–66.)
- <u>Count 6</u>: Civil rights violations pursuant to Cal. Civ. Code §§ 51.7 and 52.1 and Cal. Gov't. Code §§ 815.2 and 820 against all Defendants.  (*Id.* ¶¶ 67–75.)

- <u>Count 7:</u> Conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(3) against the Individual Defendants.  (*Id.* ¶¶ 76–80.)

Plaintiff seeks monetary damages, including compensatory damages, statutory damages, and punitive damages under Section 1983.  (*Id.*, Prayer for Relief ¶¶ A–C.)

## II.   LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the allegations made in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  Dismissal under Rule 12(b)(6) can be based upon either the lack of a cognizable legal theory or the absence of sufficient facts alleged under an otherwise cognizable theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534–35 (9th Cir. 1984).  When evaluating the propriety of a defendant's motion to dismiss, a court may not look beyond the complaint's four corners.  *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  The court must accept the allegations in the complaint as true and must construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

To survive a motion to dismiss for insufficient factual allegations, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  A claim has facial plausibility when it is supported by factual content that enables the court to reasonably infer that the defendant is responsible for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  A plausible claim is supported by "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

Courts have an obligation to construe *pro se* complaints liberally when evaluating them under *Twombly* and *Iqbal* for facial plausibility.[3]  *See Hebbe v. Pliler*, 627 F.3d 338, 341–42 (9th Cir. 2010).   But while *pro se* pleadings "must be held to a less stringent standard than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), a plaintiff's *pro se* status does not excuse her from the requirement that she state a plausible claim to defeat a Rule 12(b)(6) challenge, *see Hebbe*, 627 F.3d at 341–42.   *Accord Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.").   Indeed, the Court cannot assume that Defendants "have violated the . . . law[] in ways that have not been alleged" simply because Plaintiff was *pro se* at the time she filed her Complaint.  *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.   ANALYSIS

Defendants move to dismiss four of Plaintiff's seven claims on several bases.  First, Municipal Defendants argue that Plaintiff's Section 1983 claims against them (Count 2 and, in part, Count 3) warrant dismissal under Rule 12(b)(6) because her allegations of municipal liability are conclusory and recitations of the requisite elements under *Monell*.[4] (Mot. at 9:27–12:24.)   Second, Defendants aver that Counts 4 and 6 must be dismissed because the Plaintiff is not a "real party in interest" to those claims under Cal. Civ. Proc. Code § 367.  (*Id.* at 15:9–23.)   Finally, Defendants aver that Plaintiff fails to plead a requisite element of all her state law claims:  that she complied with the CTCA's claim-presentment requirement.  (*Id.* at 12:25–15:8.)  In fact, Defendants contend all the state law claims (Counts 4 through 6) must be dismissed with prejudice as time-barred because even if Plaintiff were to now present her claims, such presentment would be far too delinquent

---

[3] As mentioned previously, although Plaintiff is represented by counsel in this action now—and had the benefit of counsel in preparing her Opposition—her Complaint is a *pro se* filing.

[4] While Municipal Defendants do not explicitly attack Count 3, that claim also must be dismissed against Municipal Defendants if their *Monell* argument prevails.

to be permissible under the CTCA.  The Court addresses each of these arguments, in turn, below.

### A.   *Monell* Liability

Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted).  "To establish [Section] 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Municipal entities such as cities, counties, and other local government bodies may be held liable for claims under Section 1983.  *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978).  In *Monell*, the Supreme Court "explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of *respondeat superior*, liability may attach where the municipality *itself* causes the constitutional violation through the execution of an official policy, practice or custom." *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002) (citing *Monell*, 436 U.S. at 690–91).  Here, Plaintiff principally employs *Monell* to seek recovery from the Municipal Defendants for the Individual Defendants' purported excessive and unjustified use of lethal force, in alleged violation of the Fourth Amendment, when they shot and killed her son.[5]  She also

---

[5] In general, "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."  *Alderman v. United States*, 394 U.S. 165, 174 (1969).  "In § 1983 actions, however, the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf if the relevant state's law authorizes a *survival* action."  *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998) (emphasis added).  "The party seeking to bring a survival action bears the burden of demonstrating that a particular state's law authorizes a survival action and that the plaintiff meets that state's requirements for bringing a survival action." *Id.*  Here, California state law authorizes a survival action, and there is no

relies on *Monell* to seek recovery from the Municipal Defendants for Individual Defendants' alleged intrusion upon her right—secured by the Fourteenth Amendment's due process clause—to be free of state interference with familial relations and integrity, which also arises from the shooting death of her son.  (*See* Compl. ¶¶ 34–44 (Count 2); Compl. ¶¶ 45–52 (Count 3).)

To successfully establish *Monell* liability, a plaintiff must show:  (1) the plaintiff possessed a constitutional right of which she was deprived; (2) the municipality had a policy, practice, or custom[6]; (3) that policy, practice, or custom is deliberately indifferent to plaintiff's constitutional right; and (4) the policy, practice, or custom at issue is "the 'moving force' behind" the constitutional violation alleged.  *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007).  Municipal Defendants contend that Plaintiff fails to allege adequately the second element of *Monell*:  a discrete policy, custom, or practice.

The "policy, custom, or practice" requirement stems from the core principle ensconced in *Monell* that "'municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986) (plurality)).  A policy, custom, or practice may be established in three ways, by showing:  (1) "a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) "the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy"; and (3) "an

---

dispute that Plaintiff qualifies as the successor-in-interest to her son's estate. Therefore, she may assert a Fourth Amendment excessive force claim on Ronnie Kong's behalf. *See, e.g., id.*

[6] A survey of decisional law concerning *Monell* discloses that courts often refer to the terms "policy, practice, or custom" and "official policy" interchangeably.  Yet, as will become clear below, "official policy" and "express" or "formal" policy are not analogous.  Rather an "express" or "formal" policy is a type of "official policy" that frequently is reduced to writing by policymakers.

official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations and internal quotations omitted); *see also Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quoting same).

"Policies of action" and "policies of inaction" may both give rise to liability under *Monell*. *Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (citation omitted). A policy of inaction "is based on a government body's 'failure to implement procedural safeguards to prevent constitutional violations.'" *Id.* (quoting *Tsao*, 698 F.3d at 1143). A "failure to train" or "failure to investigate" are among the commonly recognized policies of inaction. *Id.*; *see Brizuela v. City of Sparks*, 3:19-cv-0692-MMD-VPC, 2022 WL 3229389, at *35, *37 (D. Nev. Aug. 10, 2022) (recognizing "failure to investigate" as valid theory for *Monell* liability and denying summary judgment).

The "plausibility standard" enunciated in *Twombly* and *Iqbal* applies to *Monell* claims. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636–37 (9th Cir. 2012). Thus, while courts differ in their opinions as to the degree of specificity and detail needed to defeat a Rule 12(b)(6) challenge to a *Monell* claim, such a claim necessarily fails if it is premised upon the "bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Id.*

It appears from the Complaint Plaintiff seeks to allege the existence of an official policy pursuant to several possible avenues of *Monell* liability. In particular, she seems to aver the Fourth and Fourteenth Amendment violations alleged in the Complaint stem from: (1) a formal governmental policy; (2) a practice or custom; (3) an official policy of inaction, namely failure to adequately train, investigate, and discipline; and (4) ratification by a final policymaker. For the reasons set forth below, the Complaint lacks the requisite factual content to invoke any one of these methods.

### 1. Formal Governmental Policy

One way in which Plaintiff can demonstrate a "policy, practice, or custom" as a prerequisite of *Monell* is to show that the Municipal Defendants employed a "formal" or

"express municipal policy," which was the moving force behind the Fourth and Fourteenth Amendment violations alleged in the Complaint.  *See Gillette*, 979 F.2d at 1346–47; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

A *Monell* claim predicated upon a formal policy differs from one premised upon a practice or custom in two respects.  First, formal policies often are committed to writing.  *See Pembaur*, 475 U.S. at 480–81. They include, *inter alia*, ordinances, regulations, statutes, and policy statements.  *Id.*; *Praprotnik*, 485 U.S. at 127.[7]  Second, a single constitutional violation undertaken pursuant to a formal policy may be sufficient to establish municipal Section 1983 liability.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).  In other words, Plaintiff need not attribute a history or pattern of similar constitutional violations attributable to the relevant formal policy in order to pursue her *Monell* claim.  It is sufficient to show the express policy attaches to the constitutional tort at issue.  *See Lowry v. City of San Diego*, 818 F.3d 840, 855 (9th Cir. 2016) (distinguishing "official policy" from "custom"), *rev'd on other grounds*, 858 F.3d 1248 (2017) (en banc).

To successfully plead *Monell* liability under this theory, a plaintiff must "specify the content of the policies, customs, or practices the execution of which gave rise to [his or her] Constitutional injuries."  *La v. San Mateo Cnty. Transit Dist.*, No. 14-CV-01768-WHO, 2014 WL 4632224 (N.D. Cal. Sept. 16, 2014); *see also Rapinoe v. Gore*, No. 21-CV-1779 TWR (WVG), 2022 WL 686461 (S.D. Cal. Mar. 8, 2022) ("Rapinoe must do more than allege Defendants 'maintained or permitted an official policy, custom or practice of knowingly permitting the occurrence of the type of wrongs.'").  Put differently, a plaintiff "must identify a specific policy or custom and then articulate . . . the basis for concluding [how] the identified policy or custom represents 'official policy.'"  *M.S. v. City*

---

[7] Because they are written, demonstrating the existence of a formal policy perhaps is the most straightforward way in which to satisfy the second element of *Monell*.  But despite being straightforward, this route often is elusive, for municipalities have every incentive not to promulgate facially unlawful and unconstitutional edicts as official policy.  *See, e.g.*, Sarah Mikva Pfander, *The Path to Municipal Liability for Racial Discriminatory Policing*, 69 UCLA L. Rev. 1270, 1292–93 (Jan. 2023) ("Because police departments draft their use of force policies to avoid civil liability for excessive force violations, [express or formal] police policies themselves will rarely be the causal force [of a successful *Monell* claim].").

22cv1858

*of Fontana*, EDCV 16-02498 JGB (DTBx), 2017 WL 10545379, at *6 (C.D. Cal. Apr. 13, 2017) (citing *Monell*, 436 U.S. at 691).  Plaintiff's allegations fail at the first benchmark.

The Complaint contains a single allegation that seeks to demonstrate a formal policy was the moving force behind the Individual Defendants' unreasonable and excessive use of lethal force that killed Plaintiff's son.  (Compl. ¶ 38.)  Plaintiff alleges that Municipal Defendants' "expressly adopted official policies . . . [have] resulted in repeated incidents of officer involved shootings and excessive force, against members of the general public, inmates, suspects, and defendants."  (*Id.*)  She essentially avers that Municipal Defendants employ a collection of unnamed, unstated, and undefined "policies," which purportedly give rise to the precise flavor of constitutional injuries both her son and, by extension, she endured.  Providing details about the perceived consequences of the Individual Defendants' alleged misconduct is not the same as identifying a specific, express policy of the Municipal Defendants that directed the Individual Defendants to act in the manner they did.  *Cf. Garcia v. Cnty. of Napa*, No. 21-CV-03519-HSG, 2022 WL 110650, at *6 (N.D. Cal. Jan. 12, 2022) (holding "Plaintiffs' allegations that Napa County has policies '[t]o use or tolerate the use of unlawful deadly force, of covering up constitutional rights, and for encouraging a 'code of silence' fail for being too vague . . . to adequately allege the policy at issue"; collecting cases) (alterations in original).

In short, Plaintiff fails to point to a tangible formal policy, such as an ordinance, regulation, policy statement, or official decision.  *See Hardrick v. City of Detroit*, 876 F.3d 238, 244–45 (6th Cir. 2017) (holding unconstitutional policy under *Monell* based on city ordinance); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 2013) (holding Memphis Police Department General Order 5-74(3)(b)(3), which governs appropriate use of deadly force, constitutes a "policy" for *Monell* purposes).  Instead, she offers a formulaic recitation of the second *Monell* element—that Municipal Defendants have an official policy—in lieu of any apposite formal policy.  *Cf. Segura v. City of La Mesa*, --- F. Supp. 3d. ---, 2022 WL 17905529, at *6 (S.D. Cal. Dec. 23, 2022) (opining that bare and sweeping allegations of an unlawful policy or custom in the absence of facts supporting

their existence and applicability are insufficient; collecting cases).  But "a complaint that tracks *Monell*'s requirement of official policy with bare allegations cannot stand." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985).  Therefore, Plaintiff fails to demonstrate a "policy, custom, or practice" of Municipal Defendants by way of a formal policy.

### 2.    Longstanding Practice or Custom

A failure to allege a formal policy does not necessarily spell the end for Plaintiff's *Monell* claims.  She still may establish liability through allegations that demonstrate the constitutional harms suffered were the result of a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity." *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002).

"Practices" and "customs" differ from express policies in that they generally have "not been formally approved by an appropriate decisionmaker" but are still "so widespread as to have the force of law." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).  Unlike allegations of an express policy, "liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

Courts are "somewhat split" on the level of detail and the number of similar unconstitutional incidents a plaintiff must show to establish a longstanding practice or custom. *See Ingram v. Mouser*, No. 1:19-cv-0308-DCN, 2021 WL 329559, at *5 (D. Idaho Feb. 1, 2021) (observing "[s]ome [courts] allow very generic allegations, and others require more details than a mere possibility that a policy exists," but that both approaches are grounded in "good policy arguments").  As one district court surveying the relevant case law recently opined, "[T]here is no *per se* rule" for the number of unconstitutional incidents a pleading must identify to establish a practice or custom under *Monell*, but "[t]he Ninth Circuit and district courts within the Ninth Circuit have repeatedly declined to infer a custom [or practice] of constitutional violations based on two unconstitutional incidents

- 11 -

alone." *Wettstein v. Cnty. of Riverside*, EDCV 19-1298 JGB (KKx), 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020) (citing, *inter alia*, *Meehan v. Cnty. of Los Angeles*, 856 F.3d 102, 107 (9th Cir. 1988); *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017)).

The Complaint principally seeks to demonstrate *Monell* liability through allegations of "practices" or "customs." The problem that plagues Plaintiff's practice-or-custom allegations is different from the one that felled her formal-policy allegations. To her credit, Plaintiff does not rely merely upon vague and ambiguous practices and customs. Several she details are, in fact, cognizable practices and customs, which have been recognized by other courts to pass muster at the Rule 12(b)(6) stage, so long as the record demonstrates they are of sufficient duration, frequency, and consistency. For example, Plaintiff alleges Municipal Defendants have a practice or custom of "using unreasonable and excessive force, including deadly force." (Compl. ¶ 35.) Other courts have found that allegations a police department has a practice or custom of using excessive or unreasonable deadly force can, if supported by factual content demonstrating that practice or custom is longstanding, form the basis of a *Monell* claim. *See, e.g.*, *Ponce v. City of Fontana*, No. EDCV 15-0074-VAP (SPx), 2015 WL 13765047, at *4 (C.D. Cal. July 17, 2015) (denying Rule 12(b)(6) motion where plaintiff alleged defendant's police department had a custom of using "excessive deadly force"). Plaintiff also alleges that Municipal Defendants encourage and facilitate a "code of silence" among SDPD officers, "pursuant to which false reports were generated and [incidents of] excessive and unreasonable force w[ere] covered up." (Compl. ¶ 35.) Again, this Court's sister tribunals have found that similar allegations describe in sufficient detail cognizable practices or customs. *See, e.g.*, *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 893 (N.D. Ill. 2016) (finding allegation that a "code of silence" pervaded among officers in police department "may be read as referring to a set of interrelated, mutually-reinforcing customs or practices, all of which contribute to civil rights violations of the kind alleged by [plaintiff]," and denying Rule 12(b)(6) motion).

22cv1858

1    Rather, the problem with this strand of Plaintiff's theory of "official policy" is that

2    she fails to posit facts that enable the Court to reasonably infer the practices and customs

3    alleged are of "sufficient duration, frequency and consistency that the conduct has become

4    a traditional method of carrying out policy." *See Trevino*, 99 F.3d at 918.  Here, reading

5    the Complaint in a light most favorable to Plaintiff, she attempts to allege only one Fourth

6    Amendment violation attributable to the practices and customs identified:  the shooting

7    death of her son.[8]  (*See* Compl. ¶¶ 20–24.)  This is patently insufficient:  "Liability for

8    improper custom may not be predicated on isolated or sporadic incidents." *Trevino*, 99

9    F.3d at 918; *Lowry*, 818 F.3d at 855 (similar); *see also Oyenik*, 696 F. App'x at 794

10   (opining that "one or two incidents are insufficient to establish a custom or policy")[9];

11   *Safadi v. City of Lynnwood*, No. C23-886-RSM, 2023 WL 4492338, at *1 (W.D. Wash.

12   July 12, 2023) ("[T]he occurrence of a single incident of unconstitutional action by a non-

13   policy-making employee is not sufficient to show the existence of an unconstitutional

14   custom or policy" (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir.

15   1989))).   Nor does her averment that the various practices and customs she identifies are

16   "widespread," "longstanding" and, therefore, "constitute a standard operating procedure,"

17   save the day.  (*See* Compl. ¶ 38.)  *Twombly* and *Iqbal* do not permit the presumption of

18   truthfulness to attach to such conclusory allegations; Plaintiff cannot survive a Rule

19   12(b)(6) challenge through recital of the elements of a *Monell* claim. *See Ulrich*, 308 F.3d

20   at 985.  Plaintiff must, at a minimum, allege specific examples of death and injury of

21   citizens due to SDPD officers' use of excessive and unreasonable force beyond just the

22   case of Ronnie Kong.

23

24   ───────────────

      [8] The Court notes that the allegations supporting Count 1—Plaintiff's claim that the Individual

25   Defendants violated her son's Fourth Amendment rights—are sparse and, therefore, not particularly
      strong.  (*See* Compl. ¶¶ 21–23 (alleging that Individual Defendants were called to an apartment building

26   where Ronnie Kong was believed to have killed a person with a firearm, that Ronnie Kong emerged when
      summoned, and that Individual Defendants then shot Ronnie Kong multiple times, killing him).)  But this

27   Court makes no judgment now on the sufficiency of Count 1.
      [9] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule

28   36-3(b).

1     In sum, because Plaintiff fails to identify other similar incidents in which the

2   Municipal Defendants' purported practices and customs manifested themselves in

3   constitutional violations, she is precluded from pursuing a *Monell* claim under a practices-

4   or-customs theory.

5                              **3.   Policies of Inaction**

6     As mentioned above, *Monell* liability attaches not just to official policies of action

7   but also, in certain circumstances, to official polices of inaction.  *See Jackson*, 749 F.3d at

8   763.  The Complaint touches upon two theories of inaction:  (1) Municipal Defendants'

9   purported failure to adequately train SDPD officers and (2) Municipal Defendants'

10  purported failure to investigate officers' excessive use of force and to discipline offending

11  officers.  (Compl. ¶ 35.)

12    <u>Failure to Train</u>:  To state a claim for failure to train, a plaintiff must plead (1) "the

13  existing training program" is inadequate "in relation to the tasks the particular officers must

14  perform"; (2) the officials have been deliberately indifferent "to the rights of persons with

15  whom the police come into contact"; and (3) the inadequacy of the training "actually

16  caused" the deprivation of the alleged constitutional right.  *Merritt v. Cnty. of Los Angeles*,

17  875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotation marks omitted); *see also*

18  *City of Canton*, 489 U.S. at 388 (opining that the inadequacy of police training may serve

19  as the basis for municipal liability under Section 1983 "only where the failure to train

20  amounts to deliberate indifference to the rights of persons with whom the police come into

21  contact"); *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021).

22    Plaintiff alleges Municipal Defendants failed to "train" and "retrain" SDPD officers.

23  (Compl. ¶ 35.)  These allegations are insufficient in at least two respects.  First, the

24  Complaint does not allege with sufficient specificity which training programs were

25  deficient, or how they were so.  Instead, it merely concludes that ambiguous training

26  programs of Municipal Defendants are "inadequate," and then repeats the same language

27  of the other requisite elements to establish a failure to train theory of *Monell* liability.  *See*

28  *Koistra v. Cnty. of San Diego*, No. 16CV2539-GPC(AGS), 2017 WL 4700073 (S.D. Cal.

Oct. 19, 2017) (dismissing plaintiff's complaint that merely regurgitated elements of the failure to train standard); *Sekerke v. City of Nat'l City*, No. 19CV1360-LAB (MSB), 2020 WL 4435416 (S.D. Cal. Aug. 3, 2020) (same).   Second, Plaintiff cannot establish the inadequacy of an existent training program based upon just one alleged constitutional violation. *See Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious, an inadequate training policy itself cannot be inferred from a single incident.") (citations and internal quotation marks omitted).

Deficient Review, Investigation, and Discipline:  Failure to review and investigate complaints of police officer misconduct and to discipline appropriately offending officers may amount to an official policy of inaction for the purpose of *Monell*. *See, e.g.*, *Peterson v. City of Chicago*, No.: 14-cv-9881, 2015 WL 13882814, at *6 (N.D. Ill. June 23, 2023) ("Plaintiff may proceed on a *Monell* claim based on Defendant City of Chicago's alleged intentional failure to investigate and discipline police misconduct regarding the types of constitutional deprivations alleged in Plaintiff's amended complaint[.]").

Plaintiff alleges the Municipal Defendants "[m]aintain[] grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by officers"; "fail[] to . . . discipline" SDPD officers, including the Individual Defendants; and fail to "implement corrective action" against and terminate problem officers.  (Compl. ¶ 35.)  Like Plaintiff's failure-to-train allegations, these averments are at once too ambiguous and lacking in the necessary factual support. Plaintiff does not identify the investigatory procedures for reviewing police misconduct she purports to be inadequate, does not allege with any level of precision the type of complaints and/or misconduct the Municipal Defendants overlooked, does not identify a single instance in which an SDPD officer was inadequately investigated or disciplined, and does not identify any other constitutional violations arising out of this policy of inaction. *Cf. Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018) (noting that a

failure-to-discipline theory of *Monell* liability requires a showing of "widespread" or "repeated constitutional violations" that were ignored); *accord Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020) ("'[A] claim based on inadequate investigation' requires 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances. *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017).  That is, 'there must be multiple earlier inadequate investigations and they must concern comparable claims.' *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019).").

Accordingly, Plaintiff fails to allege Municipal Defendants can be held liable under *Monell* for instituting policies of inaction.

### 4.     Ratification

A *Monell* claim based on a ratification theory applies where a municipal policy maker (1) has knowledge of the subordinate's alleged conduct, (2) approves of the subordinate's decision and the basis for it, and (3) a conscious, affirmative choice to ratify the conduct.  *See Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), *vacated on other grounds by, Brosseau v. Haugen*, 543 U.S. 194 (2004); *Gillette*, 979 F.2d at 1348.  In the context of police shootings and excessive force, courts have found that ratification can occur either before, during, or after the alleged constitutional deprivation.  *See, e.g.*, *Hammond v. Cnty. of Madera*, 859 F.2d 797, 802–03 (9th Cir.1988) (finding ratification based upon police chief's signing a letter refusing to sustain any complaints of excessive force against the department); *Hulstedt v. City of Scottsdale*, 884 F. Supp. 2d 972, 1014–15 (D. Ariz. 2012) (finding allegations that police chief "approv[ed] the decision to shoot and the decision of the Shooting Review Board" sufficient to demonstrate ratification of the actions of the individual police officers).

Here, Plaintiff alleges that the Municipal Defendants "ratified," *inter alia*, the use of excessive lethal force by SDPD officers, including the Individual Defendants.  (Compl. ¶ 35.)  She also alleges that Municipal Defendants customarily are engaged in "ratifying wrongful conduct by police officers and supervisors which result in serious injuries and

death to members of the public . . . ." (*Id.* ¶ 35).  These allegations are conclusory and, therefore, insufficient to state a plausible *Monell* claim.  Crucially, Plaintiff does not surpass the first hurdle of ratification:  she points to no specific policy-making official who ratified the alleged constitutional torts against Ronnie Kong.  Indeed, she does not allege any of the Individual Defendants are final policymakers, but instead avers the Individual Defendants were responding SDPD officers directly involved in the alleged constitutional tort at issue.  (*See* Compl. ¶ 11.)  For this reason, the Court cannot even begin to assess the other requisite elements of *Monell* ratification and, therefore, finds this variant of Counts 2 and 3 deficient.  *See Price*, 513 F.3d at 966 (quoting *Ulrich*, 308 F.3d at 984–85).

\*     \*     \*     \*

Plaintiff fails to allege enough facts to plead plausible Section 1983 claims against the Municipal Defendants under *Monell*.  Therefore, the Court **GRANTS** the Motion to the extent it seeks Rule 12(b)(6) dismissal of Count 2 in its entirety and Count 3 against the Municipal Defendants.  (ECF No. 7.)

However, that dismissal shall be **WITHOUT PREJUDICE**.  It is not clear at this moment that amendments would be futile.  *See Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (holding that district court abuses discretion in not granting leave to amend where amendment is not futile).  Despite not being able to do so on her first attempt, with the aid of counsel, Plaintiff very well may be able to identify, for example, a formal use-of-force policy on the City's books or in SDPD's files, or to allege facts that support a finding of a "practice" or "custom" of excessive force, a policy of inaction, or a final policy maker's ratification of Ronnie Kong's shooting.  Accordingly, the Court **GRANTS** Plaintiff leave to file a First Amended Complaint.

### B.     State Law Claims

Defendants attack Plaintiff's state law claims on two bases.  First, they contend Plaintiff lacks "standing" to assert Counts 4 and 6.  To be clear, Defendants' argument is not entrenched in Article III, § 2 of the United States Constitution, and the Motion does not raise a Rule 12(b)(1) challenge.  Defendants really argue Plaintiff lacks *statutory*

22cv1858

standing.  They claim that because the alleged assault, battery, and deprivation of civil rights were inflicted upon Ronnie Kong, Plaintiff "is not a real party in interest as required by [Cal. Civ. Proc. Code] § 367" and, therefore, cannot sue.  (Mot. at 15:9–23.)  Second, Defendants aver that all Plaintiff's state law claims must be dismissed due to her failure to comply with the CTCA's claim-presentment requirement. (*Id.* at 12:25–15:8.)  While the Court rejects Defendants' so-called "standing" arguments, it agrees that Counts 4, 5, and 6 must be dismissed for Plaintiff's failure to comply with the CTCA.

### 1.    California Code of Civil Procedure § 367

Under Section 367, "[e]very action must be prosecuted in the name of the real party in interest, *except as otherwise provided by statute*."  Cal. Civ. Proc. Code § 367 (emphasis added); *see Limon v. Circle K Stores Inc.*, 84 Cal.App.5th 671, 691 (2022) ("Code of Civil Procedure, section 367 . . . largely prohibits persons from pursuing claims they themselves do not own.").  Indeed, the state legislature may "grant [individuals] a right to sue for the benefit of others, i.e., to make him a real party in interest."  *Jasmine Networks, Inc. v. Superior Ct.*, 180 Cal.App.4th 980, 992 (2009).  One such statutory creation of the California legislature is a survival action pursuant to Cal. Civ. Proc. Code §§ 377.20 and 377.30.

"In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained [while alive]."  *Davis v. Bender Shipbuilding & Repair Co.*, 27 F.3d 426, 429 (9th Cir. 1994); *Oh v. Teachers Ins. & Annuity Ass'n of Am.*, 53 Cal.App.5th 71, 82 (2020) (holding a survival action is "derivative" of a decedent's *other* claims and, thus, cannot be pressed as a standalone cause of action).  Survival actions "prevent the abatement of the cause of action of the injured person and provide for its enforcement by or against the personal representative of the deceased."  *Quiroz v. Seventh Ave. Ctr.*, 140 Cal.App.4th 1256, 1264 (2006) (quoting *Grant v. McAuliffe*, 41 Cal.2d 859, 864 (1953)).  By statute, the California legislature prescribes who is authorized to step in the shoes of a decedent's estate and commence claims belonging to it on its behalf.  *See Estate of Wilson by and through Jackson v. Cnty. of San*

22cv1858

*Diego*, 20-cv-0457-BAS-DEB, 2022 WL 789127, at *24 (S.D. Cal. Mar. 14, 2022) (holding that standing to bring a survival action is statutory in origin).

Under Section 377.30, a "personal representative" or "successor in interest" of the estate may commence a survival action. A successor in interest is defined as "the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal Civ. Proc. Code § 377.11. If the decedent left behind a will, the "beneficiary" is defined as the person or persons "who succeed to a cause of action, or to a particular item of property that is the subject of a cause of action, under the decedent's will." *Id.* § 377.10(a). If the decedent died intestate, the "beneficiary" is the person who succeeds a cause of action or particular item of property under Sections 6401 and 6402 of the Probate Code. *Id.* § 377.10(b). Under Section 6502 of the Probate Code, a decedent's parent is the "beneficiary" of the decedent's estate if there is no surviving spouse or issue. Cal. Prob. Code § 6402(b).

Plaintiff clearly brings Counts 4 and 6 as survival actions. (*See* Compl. ¶ 53 (identifying "Plaintiff ESTATE OF RONNIE KONG" as the Plaintiff for the purpose of Count 4); ¶ 70 ("Plaintiff asserts the violations of RONNIE KONG's rights pursuant to California's Survival Statute, Code of Civil Procedure § 377.30 *et seq.*").) She alleges the estate on whose behalf she asserts Counts 4 and 6 belongs to her decedent son, thereby enabling this Court to infer she qualifies as a "beneficiary" under Cal. Prob. Code § 6402(b) and has statutory standing. (*See, e.g.*, Compl. ¶¶ 1–3.)

Defendants, however, contend—without providing much reasoning—that Plaintiff cannot bring Counts 4 and 6 as survival actions because she is precluded from doing so by Cal. Civ. Proc. § 367. But it is entirely unclear to the Court how Defendants reconcile this argument with Section 367's explicit exception—that persons who are not real parties in interest may nonetheless commence an action when "otherwise provided by statute"—and Cal. Civ. Proc. Code §§ 377.20 and 377.30—which confers an estate's personal representative or successor in interest the right to commence a survival action on its behalf.

- 19 -

Sections 377.20 and 377.30 of the California Code of Civil Procedure prevent precisely the sort of claims pressed here from extinguishing with the death of the victim. If Ronnie Kong were still alive, he would be entitled to bring those causes of action in this court. But he is not. So, instead, his claims survive by operation of California law and pass to his estate on whose behalf its successor in interest is authorized to sue.

Notably, Defendants do not provide a single case that suggests common law assault and battery claims or California civil rights violations cannot be brought as survival actions. By contrast, this Court's own cursory survey of decisional law discloses that such claims are quite commonplace in the context of fatal torts. *Cf. L.V.B. v. City of Chino*, No. EDCV 09-2223 DMG (DTBx), 2010 WL 11596566, at *1 (C.D. Cal. Feb. 18, 2010) (permitting survival act claims alleging assault and battery past Rule 12(b)(6) stage); *Wallace v. City of Hesparia*, 369 F. Supp. 3d 990, 1021 n.12 (C.D. Cal. 2019) ("[T]he Court agrees with the reasoning set forth in [*Dela Torre v. City of Salinas*, No. C-09-0626 RMW, 2010 WL 3743762 (N.D. Cal. Sept. 17, 2010)] and [*Medrano v. Kern Cnty. Sheriff's Officer*, 921 F. Supp. 2d 1009 (E.D. Cal. 2013)] that a person's Bane Act claim [Cal. Civ. Code § 52.1] survives the person's death under California Code of Civil Procedure § 377.20[.]"); *Anderson v. Cnty. of Fresno*, 1:21-cv-1134-ADA-SAB, 2023 WL 2761168, at *25 (E.D. Cal. Apr. 3, 2023) (Report & Recommendation) (collecting cases interpreting claims for deprivation of civil rights under California law to survive a person's death). Because Defendants do not argue Plaintiff is not a proper "successor in interest," the Court is left without any apparent basis for Defendants' belief Counts 4 and 6 fail for lack of statutory standing. (*See* Compl. ¶¶ 8–9.) Accordingly, the Court summarily rejects this strand of the Motion.

## 2. California Tort Claims Act

Under California law, "[s]uits for money damages or damages against a public entity are regulated by the [CTCA]." *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal.4th 983, 989 (2012). The CTCA provides, in pertinent part: "[N]o suit for money damages may be brought against a public entity on a cause of action for which a claim is required to be

- 20 -

presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . ., or has been deemed to have been rejected[.]"  Cal. Gov't Code § 945.4.  The CTCA's claim-presentment requirement applies with equal force to public employees.  See *Wills v. City of Monterey*, 617 F. Supp. 3d 1107, 1126 (N.D. Cal. 2022).  The CTCA's claim-presentment requirement's purpose is to "provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."  *City of Stockton v. Superior Ct.*, 42 Cal.4th 730, 746 (2007).  "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against [public entities and employees], and thus [is] an element of the plaintiff's cause of action."  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 209 (2007) (internal citation omitted).

Plaintiff acknowledges in her Opposition that Counts 4 through 6 are covered by the CTCA.  She also admits that she never presented those claims to the City in compliance with Cal. Gov't Code § 945.2.  (Opp'n at 2.)  Thus, the Court agrees with Defendants that Plaintiff cannot proceed with Counts 4 through 6 as presently alleged.  *See Shirk*, 42 Cal.4th at 209.

However, Defendants contend that Plaintiff should not be permitted an opportunity to amend Counts 4 through 6, because such amendment would be futile.  (Mot. 14:21–23.)  According to Defendants, Plaintiff must have presented her state law claims within one year of accrual or lose her right to bring them.  Because her claims accrued approximately three years ago, and because she did not present a claim to the City during that time, Defendants aver Plaintiff's state law claims must be dismissed with prejudice.

The Court agrees with Defendants that Plaintiff's state law clams are time barred.  The CTCA prescribes that claims relating to a cause of action for death or injuries to the person or injuries to personal property must be presented no later than six months after the accrual of the cause of action.  Cal. Gov't Code § 911.2(a); *see also id.* § 810.8.  A claimant may apply for leave to file a late claim, *see id.* § 911.4(a), but she must do so "within a

reasonable time not to exceed one year after the accrual of the cause of action," *id.* § 911.4(b).

"Accrual of the cause of action for purposes of the government claims statute is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants." *Shirk*, 42 Cal.4th at 209; *see* Cal. Gov't Code § 911.4(c)(1). "Generally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 806–07 (2005) (internal citation and quotation marks omitted). California courts typically find that a cause accrues the moment at which the claimant sustained the underlying injury. *Nguyen v. W. Digital Corp.*, 229 Cal.App.4th 1552, 1538–39 (2014); *see* Cal. Gov't Code § 911.4(c)(1). An important exception to this general rule is the "discovery rule," which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Fox*, 35 Cal.4th at 807.

But the instant case does not entail a difficult application of California claim accrual analysis. It is well-established that in the context of survival action, the relevant question is when the decedent—not the plaintiff stepping in the shoes of the decedent's estate—knew or had reason to know of his injury. *See, e.g. MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092, 1102 (C.D. Cal. 2009); *Estate of Jackson v. City of Modesto*, No. 1:21-CV-0415 AWI EPG, 2021 WL 4819604, at *20 (E.D. Cal. Oct. 14, 2021) (reasoning that because a survival act is derivative of claims that belonged to the decedent before death and survives to the decedent's estate, courts should examine what the decedent "would have known or suspected for purposes of accrual of the survival claims"). Here, Ronnie Kong would have been aware of the Individual Defendants' conduct, and the physical injuries he sustained by the Individual Defendants' use of lethal force, on May 29, 2020—the day of the shooting. Therefore, Counts 4 and 6 accrued on May 29, 2020, and Plaintiff had until November 30, 2020 to present those claims and had until May 29, 2021 to apply for leave to file late claims.

The same is true of Count 5, which is Plaintiff's wrongful death action. Unlike a survival action, a wrongful death action is a substantive claim that belongs to the heirs of a decedent. *Scroggs v. Coast Cmty. Coll. Dist.*, 193 Cal.App.3d 1399, 1403 (1987). Still, accrual of a wrongful death action for the purpose of CTCA presentment does not depend on what the heir or heirs entitled to sue knew or should have known. "[A] wrongful death action has its own statute of limitations, which runs from the date of death[.]" *Horwich v. Superior Ct.*, 21 Cal.4th 272, 283 (1999). Thus, although Count 5 belongs to Plaintiff, the date on which Ronnie Kong died is the date on which Count 5 accrued. Thus, Plaintiff's wrongful death claim also should have been presented to the City on November 30, 2020 and an application for leave to file a late claim should have been presented on May 29, 2021, at the latest.

Plaintiff is approximately two years delinquent under the CTCA. This likely disentitles her from proceeding with Counts 4 through 6. Nevertheless, the Court declines Defendants' invitation to dismiss Plaintiff's state law claims with prejudice at this time. To do so would be premature, for Plaintiff still has a narrow route for redress under the CTCA. The CTCA permits her to petition a California state court "for an order relieving" her from the CTCA's claim-presentment requirement. *See* Cal. Gov't Code § 946.6(a). If she does so, and if that petition is granted, her failure to file a timely claim would not doom Counts 4 through 6. Thus, the Court cannot say at this time that there are no facts Plaintiff can allege to satisfy all the elements of her state law claims.

Accordingly, the Court **GRANTS** Defendants' Motion to the extent it seeks dismissal of Counts 4 through 6, but **WITHOUT PREJUDICE**.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion and, therefore **DISMISSES WITHOUT PREJUDICE** Count 2, Count 3 against the Municipal Defendants only, and Counts 4 through 6. (ECF No. 7). The Court further **GRANTS** Plaintiff leave to file a First Amended Complaint, which she must do **by no later than September 10, 2023**. If Plaintiff chooses to do so, her amendments must be limited to

seeking to correct the deficiencies identified in this Order, including her failure to allege municipal liability under *Monell* and her failure to abide by the CTCA's claim-presentment requirement.

    **IT IS SO ORDERED.**

**DATED:  August 2, 2023**

Hon. Cynthia Bashant
United States District Judge

- 24 -

22cv1858